UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN P. JONES,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No. 3:12-cv-05241-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On August 6, 2008, plaintiff filed an application for disability insurance benefits, and on August 12, 2008, he filed another one for SSI benefits, alleging in both applications that he became disabled beginning April 1, 2006, due to an attention deficit hyperactivity disorder and a bipolar disorder. See Administrative Record ("AR") 14, 150, 154, 181. Both applications were denied upon initial administrative review on October 20, 2008, and on reconsideration on

ORDER - 1

1  January 26, 2009. See AR 14, 80, 84, 90, 92.  A hearing was held before an administrative law

2  judge ("ALJ") on June 24, 2010, at which plaintiff, represented by counsel, appeared and

3  testified, as did a medical expert and a vocational expert. See AR 33-75.

4        On August 24, 2010, the ALJ issued a decision in which plaintiff was determined to be

5  not disabled. See AR 14-27.  Plaintiff's request for review of the ALJ's decision was denied by

6  the Appeals Council on January 17, 2012, making the ALJ's decision defendant's final decision.

7  See AR 1; see also 20 C.F.R. § 404.981, § 416.1481.  On March 21, 2012, plaintiff filed a

8  complaint in this Court seeking judicial review of defendant's decision. See ECF #3.  The

9  administrative record was filed with the Court on June 4, 2012. See ECF #9.  The parties have

10 completed their briefing, and thus this matter is now ripe for the Court's review.

11       Plaintiff argues defendant's decision should be reversed and remanded for further

12 administrative proceedings, because the ALJ erred: (1) in discounting plaintiff's credibility; (2)

13 in assessing her residual functional capacity; and (3) in posing an incomplete hypothetical

14 question to the vocational expert at the hearing.  For the reasons set forth below, the Court agrees

15 the ALJ erred in assessing plaintiff's residual functional capacity and thus in determining

16 plaintiff to be not disabled.  The Court therefore finds that defendant's decision should be

17 reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan,

ORDER - 2

772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.   The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case found "[t]he overall record and objective medical evidence do not support the alleged severity of [plaintiff's] symptoms and limitations." AR 22.  A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the above clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff argues this should not be seen as a clear and convincing

ORDER - 4

reason for discounting his credibility, because "the ALJ simply summarized the approximately 500 pages of medical records in six short paragraphs." ECF #12, p. 6. The Court does not agree that this is what the ALJ *simply* did here.

An ALJ may resolve questions of credibility and conflicts in the evidence in the record, "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). This is what the ALJ did in this case. Specifically, rather than just summarize all of the medical evidence in the record as plaintiff asserts, the ALJ noted mental and physical symptoms and limitations plaintiff alleged to be disabling (see AR 22), and then explained how the clinical findings and other objective medical evidence in the record contradicted them (see AR 22-23). This was sufficient.

Plaintiff further complains that the ALJ "did not make specific findings that explained what testimony was being disregarded or what evidence undermined it," and in particular that the ALJ's "general discussion of the medical evidence was never related to any specific testimony that the ALJ was finding not credible," including the testimony regarding "the severity of his memory and concentration problems." ECF #12, p. 6. As just noted, however, after noting the allegations of disabling symptoms and limitations plaintiff made in his testimony and self-reports (see AR 22), the ALJ set forth the specific medical evidence in the record that contradicted them. For example, despite plaintiff's claim that he was always in pain, the medical evidence listed by the ALJ showed mostly unremarkable findings. See AR 22-23.

As for plaintiff's alleged memory and concentration problems, the ALJ summarized the mental status examination findings resulting from the psychological evaluation performed by Allison Schechter, Psy.D., in late September 2008, which revealed no difficulties in completing

ORDER - 5

"serial 3s and serial 7s" or spelling the word "world" forward and backward, and which showed a "good" ability in calculation. AR 22 (citing AR 465-70). While it appears plaintiff was unable to fully complete the memory tasks given him (see AR 467), Dr. Schechter did not find he had any work-related limitation due to memory problems (see AR 469-70). Further, although Dr. Schechter opined that plaintiff "may not be able to perform detailed and complex tasks because of his inattention and concentration," and therefore limited him to performing only simple and repetitive tasks (AR 469), the ALJ did not disagree with this (see AR 21). Plaintiff, therefore, has failed to show any harmful error here.[2]

It is true that to find a claimant's "allegations of severity to be not credible," the ALJ "must specifically make findings which support this conclusion." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). There is no requirement, however, that the ALJ refute each and every allegation a claimant makes, but rather is only "required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir.2002)); see also Bunell, 947 F.2d at 345-46 (noting that "a reviewing court should not be forced to *speculate* as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain") (emphasis added). In this case, as explained above, the Court has not had to speculate as to the grounds on which the ALJ discounted plaintiff's credibility, as they are sufficiently specific.

A claimant's pain testimony though may not be rejected "*solely* because the degree of pain alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748,

---

[2] See Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision."); Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Ludwig v. Astrue, 681 F.3d 1047, 1054 (burden on party claiming error to demonstrate its harmfulness).

ORDER - 6

749-50 (9th Cir. 1995) (quoting <u>Bunnell</u>, 947 F.2d at 346-47) (emphasis added); <u>see</u> <u>also</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir.2001); <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989).  The same is true with respect to a claimant's other subjective complaints.  <u>See</u> <u>Byrnes v. Shalala</u>, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that while <u>Bunnell</u> was couched in terms of subjective complaints of pain, its reasoning extended to non-pain complaints as well).

The ALJ in this case did provide other clear and convincing reasons for discounting plaintiff's credibility.  For example, the ALJ found in relevant part that:

> An April 23, 2009 treatment note from Group Health Behavioral Health shows that the claimant had returned to daily NA meetings and was going [sic] much better; "a 180" since his previous session.  He was managing his anxiety and his appetite improved and he had gained weight.  He was getting up in the morning rather than wanting to stay in bed.  He also said that praying and attending helped him, and he would continue both. Exhibit 16F/4-5.

AR 23.  The ALJ may discount a claimant's credibility on the basis of medical improvement.  <u>See</u> <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).  Plaintiff has not challenged this basis for finding him to be not entirely credible, nor does the Court find it to be improper.

The ALJ also found as follows:

> Further undermining the claimant's credibility, an April 13, 2009 treatment note from Group Health Behavioral Health shows that Agape wanted the claimant to "get on Social Security," but he did "not believe he [was] disabled."  Exhibit 16F/6.

AR 23.  As noted above, the ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms and other testimony that "appears less than candid."  <u>Smolen</u>, 80 F.3d at 1284.  This includes an ALJ's reliance on the claimant's testimony that his or her alleged impairment "was not a 'disabling problem.'"  <u>Tommasetti</u>, 533 F.3d at 1040.  Plaintiff argues that at the time he made the above statement, he simply was not

ORDER - 7

able to accept the severity of his symptoms and the fact that he was unable to work. But as noted by defendant, plaintiff's argument holds no water here, given that back in early August 2008, he filed his applications for disability insurance and SSI benefits, expressly alleging he first became disabled on April 1, 2006. See AR 14, 150, 154.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

ORDER - 8

In this case, the ALJ found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . He can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday. He can sit with normal breaks for a total of about six hours in an eight-hour workday. He can occasionally stoop, crouch, crawl, and climb ladders, ropes or scaffolds. He does not have any manipulative or visual limitations and there is not [sic] evidence of any other physical limitations or restrictions. The claimant's nonexertional limitations limit him to the performance of simple, routine, repetitive tasks. He can make judgment and exercise discretion in the performance of those simple, repetitive, and routine tasks. He can accept instructions from supervisors as long as those instructions are clearly explained. He can interact appropriately with coworkers as would be required in a routine work setting and with members of the public. The claimant can perform his work activities and needs supervision that would require more than a brief demonstration or explanation of his work duties, at least initially.**

AR 21 (emphasis in original). Plaintiff argues this RFC assessment is not completely accurate, because while the ALJ gave "substantial weight" to the opinion of Dr. Schechter (AR 23), she did not fully adopt all of the functional limitations Dr. Schechter found. Specifically, plaintiff notes that whereas Dr. Schechter opined that he "should be able to maintain work activities on a consistent basis with additional supervision" (AR 470), the ALJ found, as noted above that he "**needs supervision that would require more than a brief demonstration or explanation of his work duties, at least initially**" (AR 21), without any explanation for this discrepancy, and despite giving Dr. Schechter's opinion substantial weight.

The Court agrees the ALJ erred here. Defendant defends the ALJ's residual functional capacity assessment as follows:

> Plaintiff argues that the restriction assessed by the ALJ was inconsistent with Dr. Schechter's opinion that Plaintiff would need additional supervision ([ECF #12, p.] 10). Plaintiff premises the argument on the assumption that "additional" supervision is synonymous with "con[tinued]" supervision ([id.]). However, Plaintiff's alternative interpretation is not the only rational way to interpret Dr. Schechter's opinion. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."

ORDER - 9

> *Tommasetti*, 533 F.3d at 1041. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*[ *v. Barnhart*], 400 F.3d [676,] 679 [(9th Cir. 2005)]. The ALJ interpreted Dr. Schechter's opinion that Plaintiff required "additional supervision" as a specific need for additional help learning the job. This is consistent with Dr. Schechter's observation that Plaintiff's concentration was poor, but his persistence and pace were adequate ([AR] 469). It is also consistent with the GAF score of 65[3] assessed by Dr. Schechter, which indicates only a mild degree of symptoms overall ([id.]). Mild symptoms are more consistent with a requirement for some additional demonstration of job duties than with Plaintiff's suggested need for "con[tinued]" supervision. Thus, the ALJ rationally interpreted Dr. Schechter's opinion and assessed an appropriate limitation that reflected Plaintiff's specific workplace needs and limitations.

ECF #13, p. 11. While defendant provides one possible explanation as to how the ALJ's RFC assessment could be seen as a rational interpretation of Dr. Schechter's opinion, the problem is that the ALJ herself did not provide it. Accordingly, the Court cannot uphold the ALJ's RFC assessment on this basis.[4] See Stout, 454 F.3d at 1054 (refusing to dismiss error as harmless if doing so would require affirming denial of benefits on ground not invoked by Commissioner in denying benefits originally); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss); Pinto v. Massanari, 249 F.3d 840 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). It is unclear, therefore, whether the assessment of plaintiff's residual functional capacity made by the ALJ completely and accurately reflects all of plaintiff's mental functional limitations.

---

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 61-70 reflects mild symptoms or "some difficulty[in social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders at 30 (4th ed. 1994)).

[4] The Court, though, also finds the record does not necessarily support plaintiff's assertion that Dr. Schechter opined he would need "continued" supervision, as Dr. Schechter did not further define the phrase "additional" supervision. AR 470.

ORDER - 10

III.     The Hypothetical Question the ALJ Posed to the Vocational Expert

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 66-67.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 69-70.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 25-26.

ORDER - 11

As discussed above, however, the ALJ's assessment of plaintiff's residual functional capacity, upon which the ALJ based her hypothetical question, cannot be upheld, because it is not clear that that assessment completely and accurately reflects all of his mental limitations. The hypothetical question, therefore, also cannot be seen as being complete and accurate. The Court thus agrees with plaintiff that it was improper for the ALJ to rely on the testimony of the vocational expert to find plaintiff not disabled, given that it in turn was based on an incomplete and inaccurate hypothetical question.

VIII.  This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

ORDER - 12

Because issues still remain with respect to plaintiff's residual functional capacity, and therefore her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is proper.  Plaintiff's request for an award of attorney's fees and expenses is rejected at this time, however, as a request therefor must be made by way of separate motion.

### CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled.  Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 6th day of December, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 13